
FILED
2021 Mar-11  AM 09:33
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **CHRISTA POOLE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 4:19-cv-1754-LCB** |
| | ) | |
| **SOCIAL SECURITY** | ) | |
| **ADMINISTRATION,** | ) | |
| **COMMISSIONER,** | ) | |
| | | |
| **Defendant.** | | |

## <u>MEMORANDUM OPINION</u>

On October 27, 2019, the Plaintiff, Christa Poole, filed a complaint seeking judicial review of an adverse decision of the Commissioner of the Social Security Administration ("the Commissioner") pursuant to 42 U.S.C. § 405(g). The Commissioner filed an answer on March 30, 2020. Poole filed a brief in support of her position on May 27, 2020, and the Commissioner filed a response on July 1, 2020. Poole did not file a reply brief. Accordingly, the issue is now fully briefed and is ripe for review. For the reasons that follow, the Commissioner's final decision is affirmed.

## I.     Background

Poole protectively filed an application for supplemental security income ("SSI") on August 16, 2016, alleging disability beginning May 1, 2015. After the

claim was denied on December 9, 2016, Poole requested a hearing before an Administrative Law Judge ("ALJ").  That hearing was held on September 11, 2018.  Poole was represented by counsel and testified at the hearing, as did a vocational expert ("VE").  The ALJ subsequently issued an unfavorable decision. Poole then requested review of the ALJ's decision by the Appeals Council, but that request was denied on September 6, 2019.  This lawsuit followed.

## II.     The ALJ's decision

After the hearing, the ALJ issued a written opinion explaining his decision. (R. at 15-26).  In issuing his decision, the ALJ followed the five-step evaluation process set out by the Social Security Administration.  20 CFR 416.920(a).  The steps are followed in order and, if it is determined that the claimant is or is not disabled at a particular step of the evaluation process, the ALJ will not proceed to the next step.

The first step requires the ALJ to determine whether the claimant is engaging in substantial gainful activity, which is defined as work involving significant physical or mental activities usually done for pay or profit.  If a claimant is engaged in substantial gainful activity, she is not disabled, and the inquiry stops. Otherwise, the ALJ will proceed to step two.  In the present case, the ALJ found that Poole had not engaged in substantial gainful activity since August 16, 2016. (R. at 17).  Accordingly, the ALJ moved on to the second step of the evaluation.

At step two, an ALJ is to determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 CFR 416.920(c). An impairment is severe if it "significantly limits [a claimant's] physical or mental ability to do basic work activities…." *Id.* If a claimant does not have a severe impairment, she is not disabled, and the inquiry ends. If she does have a severe impairment, the ALJ will proceed to the third step. In the present case, the ALJ found that Poole had the following severe impairments: obesity, diabetes mellitus with neuropathy, sleep-related breathing disorders, depression, and anxiety disorder. (R. at 17). The ALJ found that Poole's hypertension and hyperlipidemia were not severe.

At the third step, an ALJ determines whether the claimant's impairments or combination thereof are of a severity to meet or medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix I. If the claimant's impairment or impairments meet or equal a listed impairment, then the claimant is disabled, and the evaluation ends. Else, the ALJ proceeds to the next step. In this case, the ALJ found that Poole's impairments did not meet or equal any of the listed criteria and, therefore, proceeded to step four.

Step four of the evaluation requires an ALJ to determine the claimant's residual functional capacity ("RFC"), and whether she has the RFC to perform the requirements of any past relevant work. 20 CFR 416.920(f). The term "past

relevant work" means work performed within the last 15 years prior to the alleged date of onset.  If a claimant has the RFC to perform past relevant work, she is not disabled, and the evaluation stops.  Otherwise, the evaluation proceeds to the final step.  In Poole's case, the ALJ found that she did not have the RFC to perform her past work as a certified nurse assistant or a cashier-stocker.  (R. at 21).  Therefore, he proceeded to the final step in the evaluation process.

At the final step, the ALJ considers whether the claimant is able to do any other work considering her RFC, age, education, and work experience.  If a claimant is able to do other work, she is not disabled.  If a claimant is unable to do such work, then she is disabled.  According to the ALJ, Poole had the RFC to perform sedentary work as defined in 20 CFR 416.967(a), with certain limitations. *Id.*  After hearing testimony from a VE, the ALJ determined that there were jobs existing in significant numbers in the national economy that Poole would be able to do given her RFC, age, education, and work experience.  Specifically, the VE opined that Poole could perform the work of a wire wrapper, final assembler, and a stuffer.  (R. 55).  Therefore, the ALJ found, Poole was not disabled as defined by the Social Security Administration.

## III.   Standard of Review

The Court must determine whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were

applied. *Winschel v. Comm'r of Social Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (internal citation and quotation marks omitted). "This limited review precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). Thus, while the Court must scrutinize the record as a whole, the Court must affirm if the decision is supported by substantial evidence, even if the evidence preponderates against the Commissioner's findings. *Henry v. Comm'r of Soc. Sec*., 802 F.3d 1264 (11th Cir. 2015); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

## IV.    Poole's arguments

In her brief, Poole first contends that the ALJ did not properly evaluate her obesity and its interplay with her other impairments. According to Poole, the medical evidence "seems to show a significant interplay between [her] problems with her diabetes and her problems with her weight…." (Doc. 13 at 15). Poole also claims that her sleep apnea and mental issues are worsened by her obesity. *Id.*

Poole specifically argues that the ALJ failed to properly follow Social Security Ruling ("SSR") 02-1p, a policy interpretation entitled, "Evaluation of Obesity." *Id.* at 11. That policy, Poole says, recognizes that obesity requires special consideration in the evaluation of a disability claim because of the fact that

obesity can contribute to or worsen other impairments including musculoskeletal

problems, sleep apnea, and mental impairments.

According to Poole, the ALJ did not apply SSR 02-1p to his evaluation

of her claims.  The Eleventh Circuit has held:

> Social Security Regulation 02–1p provides that obesity shall be
> considered when determining if (1) a claimant has a medically
> determinable impairment, (2) the impairment is severe, (3) the
> impairment meets or equals the requirements of a listed impairment,
> and (4) the impairment bars claimant "from doing past relevant work
> and other work that exists in significant numbers in the national
> economy."  SSR 02–1p.  The Regulation also states that:
>
> > Because there is no listing for obesity, we will find that
> > an individual with obesity "meets" the requirements of a
> > listing if he or she has another impairment that, by itself,
> > meets the requirements of a listing. We will also find that
> > a listing is met if there is an impairment that, in
> > combination with obesity, meets the requirements of a
> > listing....
> >
> > We may also find that obesity, by itself, is medically
> > equivalent to a listed impairment.... For example, if the
> > obesity is of such a level that it results in an inability to
> > ambulate effectively, as defined in sections 1.00B2b or
> > 101.00B2b of the listings, it may substitute for the major
> > dysfunction of a joint(s) due to any cause (and its
> > associated criteria), with the involvement of one major
> > peripheral weight-bearing joint in listings 1.02A or
> > 101.02A, and we will then make a finding of medical
> > equivalence....
> >
> > We will also find equivalence if an individual has
> > multiple impairments, including obesity, no one of which
> > meets or equals the requirements of a listing, but the
> > combination of impairments is equivalent in severity to a
> > listed impairment.

SSR 02–1p.

*Lewis v. Comm'r of Soc. Sec.*, 487 F. App'x 481, 483 (11th Cir. 2012).

Poole does not specifically articulate which listing, if any, she believes is met by the interplay between her obesity and her other conditions. Nevertheless, she argues that the ALJ never actually applied SSR 01-1p to her claims. While conceding that the ALJ devoted an entire paragraph of his opinion to discussing her obesity, *see* (Doc. 13 at 13-14), quoting (R. 17-18), and opining that it "may be a good start to his decision," Poole argues that the opinion was nevertheless deficient. The Court disagrees.

As noted, the ALJ found that Poole's obesity was a severe impairment and made the following findings:

> The claimant was reported to be five feet two inches tall and weighed 223 pounds at her consultative examination on October 22, 2016. (Exhibit B17F). Dr. Lianke Mu, her primary care physician, reported on February 14, 2018, noted that the claimant weighed 242 pounds, and assigned a body mass index (BMI) of 44.26. (Exhibit 22F). According to the National Institute of Health (NIH) in its Clinical Guidelines on the Identification, Evaluation, and Treatment of Overweight and Obesity in Adults (NIH Publication No. 98-4083, September 1998), the claimant is at Level II level of obesity, representing a greater risk for developing obesity-related impairments. Pursuant to SSR 02-1p, *the undersigned finds that this impairment, either singly or in combination with her other impairments, has more than a minimal impact on the claimant's ability to engage in work related activities and is therefore severe.*

(R. 17-18)(emphasis added).    Although Poole claims this to be insufficient, she does not elaborate on the argument.

However, the Court finds that the ALJ properly applied SSR-02-1p.    In finding that Poole's obesity, "either singly or in combination with her other impairments, has more than a minimal impact" on Poole's ability to work, the ALJ was in fact considering the interplay between her obesity and all of her other impairments, both severe and non-severe.  *See Wilson v. Barnhart*, 284 F.3d 1219, 1224-25 (11th Cir. 2002)(requirement to consider impairments in combination met when ALJ states the claimant "did not have an impairment or combination of impairments" that amount to a disability).    Further, in assessing Poole's RFC, the ALJ stated that he considered "the entire record" and "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent the objective medical evidence and other evidence."  (R. at 21).    *See Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 n.3 (11th Cir. 2010)(ALJ's statements that he considered "the entire record" and "all symptoms" indicate he considered all of claimant's impairments).    Thus, contrary to Poole's contention, the ALJ did consider her obesity in combination with her other impairments.  The Court finds this to be sufficient.

The Court also notes that the ALJ's findings regarding her obesity are supported by substantial evidence.  The ALJ found that Dr. Mu noted Poole had

uncontrolled diabetes on November 30, 2016, and that Dr. Mu counseled her on better eating habits (R. at 23, 588-89). However, the ALJ also observed that Dr. Mu's examination was within normal limits (R. at 23, 587-88). Specifically, Dr. Mu described Poole as alert, pleasant, and in no acute distress (R. at 587). He observed no swelling, tenderness, redness, or deformity of joints, and noted she had a normal gait. (R. 588). Dr. Mu's psychological examination showed that Poole was oriented, had intact cognitive function, good eye contact, and clear speech. *Id.*

The ALJ also noted that Poole returned to Dr. Mu on March 7, 2017, and reported she felt fine with no complaints (R. at 23, 584). The ALJ further observed that Dr. Mu described Poole's diabetes as much improved and encouraged her to continue complying with dieting and taking her prescribed medication (R. at 23, 585). Further, as the ALJ observed, Dr. Mu's examination of Plaintiff was generally unremarkable (R. at 24, 584). Thus, it is apparent from the ALJ's opinion that he considered Poole's obesity along with her other impairments and that his findings were supported by substantial evidence.

Poole also appears to argue that she would be unable to do the jobs identified by the VE in his determination that there was work for her in the national economy. According to Poole, the sedentary jobs of wire wrapper, final assembler, and stuffer "would clearly be production level jobs." (Doc. 13, at 17). However,

Poole cites no authority for this proposition.  Poole then appears to argue that she would be unable to perform these jobs because, she says, her impairments do not allow her to maintain attention and concentration for two hours with customary rest breaks.  Although the ALJ specifically found that she would be able to maintain such concentration, Poole asserts that this finding is not supported by substantial evidence.  The Court disagrees.

In his opinion, the ALJ stated that he found evidence to suggest only a moderate level of difficulties in maintaining concentration, persistence and pace. (R. at 20).  Further, the ALJ found that, with regard to concentrating, persisting, or maintaining pace, there was no evidence that Poole has more than moderate limitations.  *Id.*  This is supported by various records from Dr. Mu in which he notes no abnormal psychiatric findings.  Further, Poole has pointed to no records that would contradict this finding.

## V.    Conclusion

For the foregoing reasons, the Court finds that the decision of the Commissioner is due to be and is hereby **AFFIRMED**.  A final order will be entered separately.

**DONE** and **ORDERED** March 11, 2021.

**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE